**FILED**

Dec 02 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# CRIMINAL COVER SHEET

**Instructions:** *Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

| CASE NAME: | CASE NUMBER: |
|---|---|
| USA v. RAMAJANA HIDIC DEMIROVIC | CR 21-CR-00133-VC |

| | | | |
|---|---|---|---|
| Is This Case Under Seal? | Yes | No ✔ | |
| Total Number of Defendants: | 1 ✔ | 2-7 | 8 or more |
| Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326? | Yes | No ✔ | |
| Venue (Per Crim. L.R. 18-1): | SF ✔ | OAK | SJ |
| Is this a potential high-cost case? | Yes | No ✔ | |
| Is any defendant charged with a death-penalty-eligible crime? | Yes | No ✔ | |
| Is this a RICO Act gang case? | Yes | No ✔ | |
| Assigned AUSA (Lead Attorney): Joseph Tartakovsky | Date Submitted: 12/2/2021 | | |

**Comments:**

RESET FORM    SAVE PDF

Form CAND-CRIM-COVER (Rev. 11/16)

# United States District Court

## FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN FRANCISCO

FILED

Dec 02 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

18 U.S.C. § 2261A(2) – Cyberstalking (Counts 1-6)

18 U.S.C. § 371 – Conspiracy to Commit Cyberstalking (Count 7)

DEFENDANT(S).

## SUPERSEDING INDICTMENT

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this 2nd day of December 2021.

_Karen L. How_
Clerk

Joseph C. Spero, Chief Magistrate Judge

Bail, $ No Bail - Summons

STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

FILED

Dec 02 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 21-CR-00133-VC |
|---|---|---|
| Plaintiff, | ) | |
| | ) | VIOLATIONS: |
| v. | ) | |
| | ) | Counts One-Six: 18 U.S.C. § 2261A(2) – Cyberstalking |
| RAMAJANA HIDIC DEMIROVIC. | ) | |
| | ) | |
| Defendant. | ) | Count Seven: 18 U.S.C. § 371 – Conspiracy to Commit Cyberstalking |
| | ) | |
| | | SAN FRANCISCO |

# S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

**Summary of the Offenses**

1. Beginning in 2016, and continuing until at least October 2019, Defendant RAMAJANA HIDIC DEMIROVIC, an adult resident of San Francisco during the period relevant to this indictment, and her co-conspirator (a minor during part of this period), and others known and unknown to the grand jury, engaged in acts of cyberstalking against multiple minor victims and those victims' family members. The principal targets of the scheme were persons with whom the co-conspirator had a falling out after a relationship. The cyberstalking and related conduct escalated with each of these victims and involved hundreds of malicious, deceptive, and abusive communications, in DEMIROVIC's own name, or in the name of her co-conspirator, or using pseudonymous accounts.

SUPERSEDING INDICTMENT 1

2. DEMIROVIC's conduct was intended to harass and intimidate the victims by sabotaging their personal relationships, emotional health, social reputation, academic life, sense of security, and work prospects. It also attempted to cause, and did cause, substantial emotional distress to victims, and would reasonably be expected to cause such emotional distress to the victims.

**Victim F.H.**

3. F.H., then aged 14, dated the co-conspirator for a few days in February 2016.

4. On or about May 11, 2016, DEMIROVIC came to F.H.'s high school and asked students where she could find F.H. DEMIROVIC located F.H., accosted him and, in front of other students, threatened to "rip [his] fucking heart out."

5. DEMIROVIC also began contacting F.H.'s mother with intimidating messages.

6. F.H. grew anxious, depressed, and fearful of another confrontation by DEMIROVIC. He began skipping field trips and singing classes when he knew that DEMIROVIC might be present. He sought therapeutic help. His grades slipped so far that his parents, C.H. and S.H., considered withdrawing him from school.

**Victim J.F.**

7. J.F. dated the co-conspirator for about two months in April and May 2016.

8. On or about July 7, 2016, DEMIROVIC called and text messaged J.F., then aged 15, while he was in class, asserting in a text message that J.F. should be "condemned."

9. On or about August 11, 2016, at 11:02 p.m., DEMIROVIC began sending a series of text messages to a telephone used by J.F., calling him an "awful human being." When J.F. asked DEMIROVIC not to communicate with him, as a minor, by text message, DEMIROVIC replied by text message: "You're not a child. You're an idiot."

10. On or about August 23, 2016, DEMIROVIC once more began sending text messages to a telephone used by J.F., at 9:38 p.m., telling J.F. that her husband would "find" J.F. and that "it's not going to look pretty." In the text messages, DEMIROVIC also threatened to seek a restraining order against the minor and suggested that, when she did so, J.F.'s college applications would be prejudiced.

11. In or around fall 2016, DEMIROVIC and her co-conspirator called J.F.'s employer to report that J.F. was physically abusive, used drugs, and had alcohol problems.

12. Around the same time, DEMIROVIC and her co-conspirator contacted administrators at J.F.'s school and repeated these allegations. Administrators at J.F.'s high school were alarmed by DEMIROVIC's conduct and arranged security measures for J.F. and barred DEMIROVIC from campus.

13. Beginning no later than October 2016, DEMIROVIC and her co-conspirator used Instagram anonymously to attack J.F. Instagram is a social networking service owned by Facebook that facilitates sharing of photos, videos, and messages. The Instagram communications to J.F. mocked the minor for having divorced parents. Among other messages, DEMIROVIC and her co-conspirator wrote: "Daddy left you so you have to be a fuckup," "It must feel awful that he left you," "What a sad piece of shit you are," and "Do you cry every night because your daddy didn't want you." Two screennames were used, each employing J.B.'s name along with a taunting moniker: "[J.B's first name] the shit" and "[J.B.'s first name] the small dick."

14. On or about October 27, 2016, J.B. was granted a valid temporary restraining order against DEMIROVIC's co-conspirator by a judicial officer. That order was in effect through at least December 2, 2016. On or about February 6, 2017, J.F. was granted a valid temporary restraining order against DEMIROVIC. The order prohibited DEMIROVIC from engaging in any conduct to "[h]arass," "intimidate," or "molest" J.F. That order was in effect through at least March 29, 2017. On or about March 29, 2017, DEMIROVIC entered into an agreement, signed by a judicial officer, in response to J.B's petition for a civil harassment restraining order, that required her to "refrain from contacting (directly or indirectly)" J.B., the order expiring on March 29, 2020.

15. This harassment undermined minor J.F.'s emotional peace, leaving him feeling helpless, fearful, and distressed. His mother disallowed him from taking the bus and hired a private driver to transport him to school and soccer practice. J.F. deleted his social-media accounts, curtailed his friendships, and changed his phone number. He could not sleep, saw his grades decline, and began seeing a therapist. At one point, on vacation in Mexico, in December 2016, J.F. thought he saw DEMIROVIC and panicked; he began packing up and demanding a return home. Years later, in November 2020, he panicked when he thought he saw DEMIROVIC at his work.

**Victim M.K.**

16. J.F.'s mother, M.K., also suffered fear about physical harm and substantial emotional distress as a result of the conduct of DEMIROVIC and her co-conspirator. J.F.'s mother found the effect of the conduct on her son "heartbreaking."

**Victim T.V.**

17. Beginning no later than May 2018, T.V. became the subject of what would be a seventeen-month campaign of cyberstalking by DEMIROVIC and her co-conspirator. This course of conduct was intended principally to humiliate T.V. and destroy his social relationships.

18. T.V. and the co-conspirator dated for about ten months beginning around May 2017. They broke up in February or March 2018.

19. On or about May 17, 2018, DEMIROVIC contacted the assistant principal of T.V.'s school to complain about T.V. The assistant principal found the contact "strange and worrisome" and alerted the school safety officer and assured T.V.'s family that he would call the police if DEMIROVIC came to campus.

20. On or about May 17, 2018, DEMIROVIC and her co-conspirator created a Gmail account that used T.V.'s first and last name and then using that account sent, to T.V., an email containing a purported "[a]rticle" that would be "published" about him. The "article" falsely labeled T.V. "emotionally and psychologically abusive" and accused him of "[o]nline bullying and anonymous messages" directed at DEMIROVIC's co-conspirator. Gmail is an email service provided by Google LLC and is an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facility of interstate commerce.

21. On or about May 19, 2018, DEMIROVIC became aware that T.V. was attending a prom event with an individual other than the co-conspirator and began sending text messages to a telephone used by T.V. One text, sent around 7 p.m., called T.V. a "piece of shit." Another text message, sent around 9:30 p.m., called a female friend of T.V. a "fat ass cow." T.V. panicked, worrying that DEMIROVIC would show up at the prom venue.

22. Beginning no later than May 17, 2018, DEMIROVIC and her co-conspirator began using social media accounts systematically to send messages to T.V.'s associates and to impersonate T.V. Some

SUPERSEDING INDICTMENT 4

Instagram screennames impersonated T.V. Other Instagram screennames, using pseudonyms, were used to circulate messages about T.V. In total, DEMIROVIC and her co-conspirator transmitted hundreds of communications about T.V., reaching thousands of individuals, including T.V. and his family, friends, school officials, and strangers.

23. For instance, on or about June 6, 2018, DEMIROVIC and her co-conspirator used an Instagram account that impersonated T.V., by using his name and picture, to publish insults against others.

24. In or around June 2018, DEMIROVIC and her co-conspirator posted an image of T.V. and a friend on Instagram with a caption suggesting that T.V. and the friend were high on drugs. The account that posted the message used T.V.'s name and photo, and identified T.V. by his high school, university, and class year for both.

25. By June 2018, dozens of friends had reached out to T.V. in confusion and concern. T.V.'s anxiety was severe enough to interfere with his ability to function.

26. On or about January 22, 2019, DEMIROVIC and her co-conspirator, using an Instagram account that impersonated T.V., insulted T.V.'s associates, calling one an "[u]ntalented fat cow."

27. On or about February 4, 2019, after midnight, DEMIROVIC and her co-conspirator sent a barrage of Instagram messages directly to T.V., calling him a "[p]iece of shit" and asserting that no woman at his university would want to "fuck a dwarf" like him.

28. On or about March 2, 2019, DEMIROVIC submitted a complaint about T.V. to Title IX officers at his university, alleging that T.V. had "harassed and stalked" girls.

29. On or about March 10, 2019, DEMIROVIC and her co-conspirator sent Instagram messages, while impersonating T.V., to at least 21 women among T.V.'s college classmates, high school friends, or acquittances. Multiple female friends of T.V. received messages, from an account used by DEMIROVIC and her co-conspirator, that invited the women to his home for sexual liaisons ("Do you wanna come over to my place…. Let's go crazy"), asked for dates ("You're so hot…. I miss you let's have lunch together"), made lewd suggestions ("What do you want me to do to you this time"), or described T.V.'s supposed drug abuse ("I've been on so many drugs lately").

30.     On or about July 23, 2019, a valid temporary restraining order was issued to T.V. by a judicial officer, protecting T.V., his parents, and his younger brother from DEMIROVIC.  The order prohibited DEMIROVIC from engaging in acts (among other things) that "[h]arass," "intimidate," "molest," "stalk," "[c]ontact" directly or indirectly, or "impersonate" those protected.  This temporary restraining order remained continuously in effect until on or around October 24, 2019.  On or about October 13, 2019, this temporary restraining order was properly served on DEMIROVIC.  On or around October 24, 2019, this temporary restraining order was reissued as a restraining order against DEMIROVIC, commanding her not to engage in conduct including acts to "[h]arass," "intimidate," "molest," "stalk," "threaten," "[c]ontact" directly or indirectly, or "impersonate" those protected.  The order, set to expire on October 24, 2024, was properly served on DEMIROVIC.

31.     On or about July 24, 2019, a valid temporary restraining order was issued to T.V. by a judicial officer, protecting T.V., his parents, and his younger brother from DEMIROVIC's co-conspirator.  The order prohibited DEMIROVIC's co-conspirator from engaging in conduct to include acts that "[h]arass," "threaten," "stalk," "molest," "contact" directly or indirectly, or "impersonate" the victims.  The order was properly served on DEMIROVIC's co-conspirator.   This temporary restraining order remained continuously in effect until on or about September 27, 2019, when the temporary restraining order was reissued as a restraining order, prohibiting DEMIROVIC's co-conspirator from engaging in conduct to include to "[h]arass," "threaten," "stalk," "molest," "[c]ontact" directly or indirectly, or "impersonate" those protected.  That order, set to expire on September 26, 2024, was properly served on DEMIROVIC's co-conspirator.

32.     On or about October 14, 2019, DEMIROVIC sent an email to an official at T.V.'s university that accused T.V. of trying to "frame" her for "online bullying."  This action by DEMIROVIC violated the restraining orders that were in effect against her and her co-conspirator.

33.     T.V. suffered panic attacks, sought therapeutic help, abandoned social media, and changed his phone number.  He remains traumatized and is a changed person.  He believes that DEMIROVIC's conduct permanently damaged his personal relationships and reputation.

**Victims W.V. and C.V.**

34. T.V.'s mother and father—W.V. and C.V.—also suffered harassing messages and online impersonation by DEMIROVIC and her co-conspirator.

35. On or about May 19, 2018, DEMIROVIC sent, to a telephone used by W.V., a text message calling her son, T.V., a "piece of shit."

36. After the harassment and impersonation of T.V. began, W.V. and C.V. received dozens of calls or messages from parents alarmed about the communications that their children were purportedly receiving from T.V. but that were actually sent by DEMIROVIC and her co-conspirator.

37. On or about December 22, 2018, W.V. received a pseudonymous Instagram message referencing "dwarfs," an allusion to previous communications about T.V. from DEMIROVIC and her co-conspirator.

38. On or about December 26, 2018, T.V.'s younger brother, then aged 16, began receiving abusive messages from a pseudonymous Instagram account controlled by DEMIROVIC and her co-conspirator, insulting the younger brother and again calling T.V. a "piece of shit."

39. On or about July 19, 2019, W.V. and C.V. each received an email from DEMIROVIC stating that she heard that T.V. was "selling drugs" and had "raped a girl."

40. On or about July 19, 2019, DEMIROVIC came to the front door of the home of T.V., W.V., and C.V., while T.V.'s brother was home alone. W.V. and C.V. were alerted to the visit by their security camera system and immediately cut short existing plans and returned home. DEMIROVIC's visit caused W.V. and C.V. to fear for their physical safety and that of their children.

41. W.V. and C.V. suffered substantial emotional distress as a result of the conduct by DEMIROVIC and her co-conspirator. W.V. was devastated by the campaign against her and against her son. The stress, fear, anger, expense, and distraction of the conduct caused C.V. to curtail his work travel and eventually to resign from his job. The trauma inflicted by DEMIROVIC and her co-conspirator contributed to the decision of T.V.'s family to move out of the San Francisco Bay Area.

**COUNT ONE:** (18 U.S.C. § 2261A(2)) – Cyberstalking) (Victim F.H.)

42. The allegations contained above are hereby re-alleged and incorporated by reference.

43. Beginning at a date unknown to the Grand Jury, but no later than May 2016, and ending

at a date unknown to the Grand Jury, but no earlier than June 2016, in the Northern District of California and elsewhere, the defendant,

RAMAJANA HIDIC DEMIROVIC,

an adult, with the intent to injure, harass, and intimidate, used an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facilities of interstate commerce, to engage in a course of conduct that placed F.H., a resident of the Northern District of California, in reasonable fear of death or of serious bodily injury, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to F.H., in violation of 18 U.S.C. §§ 2261A(2)(A) and (2)(B), with reference to 18 U.S.C. § 2.

**COUNT TWO:**         (18 U.S.C. § 2261A(2)) – Cyberstalking) (Victim J.F.)

1.  The allegations contained above are hereby re-alleged and incorporated by reference.

2.  Beginning at a date unknown to the Grand Jury, but no later than July 2016, and ending at a date unknown to the Grand Jury, but no earlier than October 2016, in the Northern District of California and elsewhere, the defendant,

RAMAJANA HIDIC DEMIROVIC,

an adult, with the intent to injure, harass, and intimidate, used an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facilities of interstate commerce, to engage in a course of conduct that placed J.F., a resident of the Northern District of California, in reasonable fear of death or of serious bodily injury, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to J.F., in violation of 18 U.S.C. § 2261A(2)(B), with reference to 18 U.S.C. § 2261(b)(6), and 18 U.S.C. § 2.

**COUNT THREE:**         (18 U.S.C. § 2261A(2)) – Cyberstalking) (Victim M.K.)

1.  The allegations contained above are hereby re-alleged and incorporated by reference.

2.  Beginning at a date unknown to the Grand Jury, but no later than July 2016, and ending at a date unknown to the Grand Jury, but no earlier than October 2016, in the Northern District of California and elsewhere, the defendant,

RAMAJANA HIDIC DEMIROVIC,

an adult, with the intent to injure, harass, and intimidate, a resident of the Northern District of California,

used an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facilities of interstate commerce, to engage in a course of conduct that placed M.K., in reasonable fear of death or of serious bodily injury, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to M.K., a resident of the Northern District of California, in violation of 18 U.S.C. § 2261A(2)(B), with reference to 18 U.S.C. § 2261(b)(6), and 18 U.S.C. § 2.

**COUNT FOUR:** (18 U.S.C. § 2261A(2)) – Cyberstalking) (Victim T.V.)

    1.    The allegations contained above are hereby re-alleged and incorporated by reference.

    2.    Beginning at a date unknown to the Grand Jury, but no later than May 2018, and ending at a date unknown to the Grand Jury, but no earlier than October 2019, in the Northern District of California and elsewhere, the defendant,

RAMAJANA HIDIC DEMIROVIC,

an adult, with the intent to injure, harass, and intimidate, used an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facilities of interstate commerce, to engage in a course of conduct that placed T.V., a resident of the Northern District of California, in reasonable fear of death or of serious bodily injury, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to T.V., in violation of 18 U.S.C. §§ 2261A(2)(A) and (2)(B), with reference to 18 U.S.C. § 2261(b)(6), and 18 U.S.C. § 2.

**COUNT FIVE:** (18 U.S.C. § 2261A(2)) – Cyberstalking) (Victim W.V.)

    1.    The allegations contained above are hereby re-alleged and incorporated by reference.

    2.    Beginning at a date unknown to the Grand Jury, but no later than May 2018, and ending at a date unknown to the Grand Jury, but no earlier than October 2019, in the Northern District of California and elsewhere, the defendant,

RAMAJANA HIDIC DEMIROVIC,

an adult, with the intent to injure, harass, and intimidate, used an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facilities of interstate commerce, to engage in a course of conduct that placed W.V., a resident of the

SUPERSEDING INDICTMENT          9

Northern District of California, in reasonable fear of death or of serious bodily injury, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to W.V., in violation of 18 U.S.C. §§ 2261A(2)(A) and (2)(B), with reference to 18 U.S.C. § 2261(b)(6), and 18 U.S.C. § 2.

**COUNT SIX:**     **(18 U.S.C. § 2261A(2)) – Cyberstalking) (Victim C.V.)**

1.   The allegations contained above are hereby re-alleged and incorporated by reference.

2.   Beginning at a date unknown to the Grand Jury, but no later than May 2018, and ending at a date unknown to the Grand Jury, but no earlier than October 2019, in the Northern District of California and elsewhere, the defendant,

RAMAJANA HIDIC DEMIROVIC,

an adult, with the intent to injure, harass, and intimidate, used an interactive computer service, electronic communication service, and electronic communication system of interstate commerce, and other facilities of interstate commerce, to engage in a course of conduct that placed C.V., a resident of the Northern District of California, in reasonable fear of death or of serious bodily injury, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to C.V., in violation of 18 U.S.C. §§ 2261A(2)(A) and (2)(B), with reference to 18 U.S.C. § 2261(b)(6), and 18 U.S.C. § 2.

**COUNT SEVEN:**     **(18 U.S.C. § 371 – Conspiracy to Commit Cyberstalking)**

3.   The allegations contained above are hereby re-alleged and incorporated by reference.

4.   Beginning at a date unknown to the Grand Jury, but no later than May 2016, and ending at a date unknown to the Grand Jury, but no earlier than October 2019, the defendant,

RAMAJANA HIDIC DEMIROVIC,

and her co-conspirator, knowingly and willfully conspired and agreed with each other to commit offenses against the United States, namely violations of 18 U.S.C. §§ 2261A(2)(A) and (2)(B), with reference to 18 U.S.C. § 2261(b)(6) and 18 U.S.C. § 2, by engaging in cyberstalking (with intent to injure, harass, and intimidate, and using facilities of interstate commerce) and a course of conduct that placed cyberstalking victims in reasonable fear of death or of serious bodily injury, and that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to those persons.

5. DEMIROVIC became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. One of the members of the conspiracy performed at least one overt act, beginning at a date unknown to the Grand Jury but no later than May 2016, for the purpose of carrying out the conspiracy, in violation of 18 U.S.C. §§ 2261A(2)(A) and (2)(B), 18 U.S.C. § 2, and 18 U.S.C. § 371.

6. DEMIROVIC committed overt acts in furtherance of the conspiracy that include:

a. On or about May 11, 2016, DEMIROVIC came to F.H.'s high school, accosted him and, in front of other students, threatened to "rip [his] fucking heart out."

b. On or about August 23, 2016, DEMIROVIC sent text messages to a telephone used by J.F., at night, telling J.F. that her husband would "find" J.F. and that "it's not going to look pretty."

c. On or about May 19, 2018, DEMIROVIC sent text messages to a telephone used by T.V., calling T.V. a "piece of shit" and causing T.V. to fear that DEMIROVIC would show up at the prom venue where T.V. was.

d. On or about July 19, 2019, W.V. and C.V. each received an email from DEMIROVIC stating that she heard that T.V. was "selling drugs" and had "raped a girl."

e. On or about October 14, 2019, DEMIROVIC sent an email to an official at T.V.'s university that accused T.V. of trying to "frame" her for "online bullying."

DATED:   December 2, 2021                                A TRUE BILL.


*/s/ Foreperson*
FOREPERSON

STEPHANIE M. HINDS
Acting United States Attorney


/s/ Joseph Tartakovsky
JOSEPH TARTAKOVSKY
Assistant United States Attorney

SUPERSEDING INDICTMENT            11

AO 257 (Rev. 6/78)

| FILED |
| --- |
| Dec 02 2021 |
| CLERK, U.S. DISTRICT COURT |
| NORTHERN DISTRICT OF CALIFORNIA |
| SAN FRANCISCO |

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. [DISTRICT COURT]

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☒ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF [CALIFORNIA]**
**SAN FRANCISCO DIVISION**

### OFFENSE CHARGED

Counts 1-6: 18 U.S.C. § 2261A(2) – Cyberstalking

Count Seven: 8 U.S.C. § 371 – Conspiracy to Commit Cyberstalking

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Counts One-Six: Imprisonment: max 5 yrs –18 U.S.C. § 2261(b)(5) & 2261B(a), 1 yr man min; 18 U.S.C. § 2261(b)(6); Fine: $250,000; 3 years supervised release; $100 special assess; restitution // Count Two: Imprisonment: max 5 years; Fine: $250,000; Supervised Release: 3 years; $100 special assess; restitution

### DEFENDANT - U.S

▶ RAMAJANA HIDIC DEMIROVIC

DISTRICT COURT NUMBER
**21-CR-00133-VC**

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form
STEPHANIE M. HINDS
☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)
Joseph Tartakovsky, AUSA

### DEFENDANT

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)
Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction   ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed

**DATE OF ARREST** ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT
If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance
Defendant Address:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:   Before Judge:

Comments: